I think we're all set. All right. Good morning, Your Honors. May it please the Court, my name is Tim Scott and I'm representing Appellant Zuberi in the public, non-classified portion of this appeal here. We began in our briefing and in our argument with admittedly a higher level proposition that the Sixth Amendment requires undivided loyalty of an attorney on behalf of a client. The Court quite properly and understandably asked for our best cases in supplemental briefing in terms of this actual conflict and the best case or the most similar case of situations like this. And so I'm going to try to answer that question here this morning. I think our two best cases. These are your best cases for the proposition that, sorry we're shifting gears from. Airport searches. That's right, that's right. Your best cases for the proposition that a conflict is going to rise to the level of a denial of counsel. That's right, that's right. So the Sixth Amendment is the relevant constitutional underpinning. And the right to counsel means more than, of course, just having an attorney. It means an attorney who has undivided loyalty in that particular case. There's two cases that I think bring some color to the fact pattern here. One is Noguera, which is the one that we cited in our 28-J. And one is Lewis, which we cited in our opening brief. Both, I think, teach that when circumstances are such that an attorney has information that they're forbidden from using, then that is when the actual conflict arises. What information was there that was forbidden? So here the information was that other folks, or at least one other person, was obtaining this sort of holy grail of the deferred prosecution agreement that was unavailable in this other case. This is not? No, it's just that you're talking about arson. Yes. Yes. The other defendant. The identity of the other person didn't matter. And certainly your client was aware that the request from his own counsel had been made, that he would also receive a deferred prosecution agreement. So what didn't he know? That the government had agreed to give somebody else a deferred prosecution agreement. Yeah, I think of the two things that Your Honor said. The identity didn't matter. I think that one's debatable. We might push back on that one. And then that his attorney tried is the other. So I think there's different answers to those two questions. Did he know that his attorney tried? He did know that his attorney tried. And our argument isn't that the attorney failed to try or that he didn't. And your argument isn't that he didn't try hard enough, right? Well, yes and no. He wasn't able to try hard enough. He wasn't able to use all of the information and all of the arguments that he otherwise would have been able to use. And do we know that? I think we do. There's two forms that the attorney otherwise would have been able to use that information. Again, the information being that there's somebody else that got this deal. One is in trying to work out the deal for Mr. Zuberi himself. It's anybody who's dealing with the government knows and trying to reach a negotiation and a plea agreement. And it's not that much different than sentencing. It's always about horizontal and vertical equities amongst and between your client and everybody else, and everybody else that the government is prosecuting. And so if you have a situation. If it's the same case. Or not. I would argue that if it's similar equities or dissimilar equities, if it's the same kind of case, then that's absolutely the sort of thing that an advocate would bring to the government's attention. So first, and if this is already in the record, I apologize. So it is in the record that Mr. Zuberi's attorney did not say to the government during deferred prosecution agreement negotiations, you're giving this to my guy, Arson, why aren't you giving it to Mr. Zuberi? Yes. That was in the briefing after this act, after the government did its press release. That was in the record afterwards. In the record where the lawyer testified, I didn't make that argument. I didn't say to the United States, you're giving it to Arson, why don't you give it to Zuberi? I believe it is, and I can give the court a citation in the supplemental review. And your view is that his inability or his decision not to do that violated the Sixth Amendment? Yeah, ultimately, the way that it played out in this case. Again, because if Mr. Zuberi had known that at the time, then Mr. Zuberi would have had that additional information and then would have. No, no, what exactly? No. He knew his lawyer had asked. He knew the government said no before he entered his plea, but what he was missing was he didn't know exactly what. That somebody else not only had asked, but that somebody else had gotten what. He would also need to know that that somebody else was similarly situated. Correct. And the attorney had all of that information. Because you're assuming that the other individual was similarly situated? Yes. Aren't there pretty significant differences in the obstruction of justice category? I don't think differences that really hurt Mr. Zuberi. I think, if anything, that Mr. Zuberi is better situated than the people that got deferred prosecution agreements. Or, at a minimum, all of the facts should have been laid out both for Mr. Zuberi's consideration in determining whether or not to take the deal, but also the prosecutor or the prosecutor's supervisors to determine whether, in fact, it was fair to give Mr. Zuberi versus these other folks deferred prosecution agreements. But then, perhaps most critically, the sentencing judge. Because that's really where it came to a head, or came to a head finally, is where the government, I would say disappointingly, stood up. And despite knowing that there were at least three other, I think four other very similarly situated individuals who, in fact, did not receive sort of send a message in excess of ten years type federal sentences, the government stood up and said, Judge, you have to send a message. These foreign agents and this kind of registration is a very serious offense, and we really have to send a message. That's the time when you have to say, well, Judge, sending a message is well and good, but look at Mr. Arsand, and look at this other gentleman, and look at all of these other folks. That's what the defense lawyer has to do at that point, and always does do. And judges, to their credit, are always asking for charts that. . . And that strikes me as a bridge way too far. But if we were to agree with you, then you would want us to vacate the plea and let your client go to trial? Well, he would have the opportunity to first move to withdraw the plea, I suppose. Well, no, and what relief are you seeking? You're seeking that we order the judge to vacate the plea. Yes. So we vacate the plea here. Yes. And then the government obviously would not be under any obligation to offer your client another plea. Right. So we vacate the plea, and then if the government wants your client to go to trial, he's going to trial. Right. The kinds of charts that you just mentioned a minute ago are charts that I, in my experience, I think judges ask for because they're looking for sentence disparity. Right. And this is, I would argue, I hope I didn't just step over the Court's question. I was about to say, I think this is even more fundamental, because if you're. . . It's one thing to sort of parse this person got 48 months and this person got 12 months of the day. But if we're talking about this person is looking at 144 months, and this person wasn't even charged, or isn't even being prosecuted, that's a pretty significant disparity. If our chart tells us that these folks were similarly situated, that's the big. . . Right. That's the big if. Right, which we would, of course, argue isn't that much of an if, just based on the record that we do have based on the government's own. Does it follow from the proposition you're advancing? I mean, your proposition has the fact that the lawyer did know because he was representing Mr. Arson, right? Yes. But it would seem to me what would also follow logically from that proposition is that every defense lawyer has a clear obligation to go scour the country to see what is out there and do all sorts of due diligence as to everybody who is arguably similarly situated and what kind of deal they're getting or not getting from the government, who got non-prost, who got a deferred prosecution agreement, who got put in diversion, what other 93 districts? I'm not sure if the number is right, but that that would be an obligation of every defense lawyer in every case. Well, I think that certainly is our duty and is our best practice to try to do that if we can, but I think that the court used the phrase a bridge too far. It probably would be a bridge too far to say that if you don't do those things in every case, then automatically that is a Sixth Amendment violation, but here we're talking about when you actually have that information or when the attorney actually had a concrete example of somebody. Again, the premise is similarly situated, and I understand that perhaps that's a debated premise, but if we assume the premise that they are similarly situated, you know, this isn't a hypothetical. This isn't scouring the country. This is just a core fact that is of great, one would think, great relevance to the court, and that's, I guess, really the fundamental question is, is there any good reason not to share that information? You mean any good reason other than the fact that lawyers have multiple clients? Well, no, that lawyers have an ethical duty not to. Well, okay, so basically this would also be a rule for lawyers who didn't want to sail too close to the wind that they really are only going to be taking one case of a kind at a time. Well, and I think, again, that's perhaps a bridge too far. I don't know why it doesn't logically follow that you're representing a special maritime material jurisdiction murder defendant in a case, but you better not represent one in an unrelated case, because you're arguably similarly situated, but you're in the process of trying to talk the government down to manslaughter, and maybe they're going to give you manslaughter, but you better not have both those cases, because you might prejudice manslaughter defendant by talking about the facts of that case to murder defendant. Well, I think if, to use that hypothetical, if the question was, is murder bad, is manslaughter bad, and what is the appropriate weight to be given in terms of general deterrence versus specific deterrence, and how do we calibrate those sentences kind of on the federal sentencing stage, then sure, that might be a consideration to weigh between the two. I think most of us, though, generally agree that murder and manslaughter are bad, and that general deterrence has its place there, but I think we've... It's like they're giving John Smith, or they're about to give John Smith manslaughter, and so I better be careful that I'm not representing John Smith and Sally Doe at the same time in the murder cases, because then I'm going to run into this conflict problem, where I'm not going to be able to say, well, I'm getting a better deal for John than I am for Sally. Well, if there's something that you know, if there's something that that attorney knows and isn't sharing, if there's something that that attorney could do that that attorney isn't doing because of that representation, then absolutely, the attorney should not do that. The attorney should declare a conflict. So I just want to be clear in terms of what you're asking this panel to do. So on the question of conflict of interest, your position is that the attorney was operating under a conflict of interest. Yes. Well, once the decision was made not to press the U.S. Attorney's Office using the fact of the other deferred prosecution agreement, and then further, once an additional decision was made not to share with Judge Phillips that there was another defendant or defendants that did receive deferred prosecution and direct contravention to the position that the government is taking in sentencing. Yes, withholding those things or holding back or pulling those punches was the act of conflict in our view. If a determination is made that there was a conflict of interest, then what? In other words, is there some showing of prejudice in your view that needs to be established? Not beyond the showing that a choice was made on that basis. That is the conflict, and that is the prejudice, so to speak. But I say that carefully because that's not a traditional prejudice analysis. It's not a Strickland analysis, but this is the Coulier, I guess, or Lockhart. If they made a different choice because of the conflict, then that makes it an actual conflict, and that is the prejudice. That makes it a Sixth Amendment violation is our view. So to the extent that we're talking about the impact of the Mickens decision on the Ninth Circuit case law, how would you frame your understanding? That it doesn't upend that prejudice framework that I described. That if the attorney ends up making a different choice, then that is actual conflict and that that's different than Strickland prejudice. I see I'm out of time. Did you have another question? With respect to the ineffective assistance of counsel argument, let's assume that there is an ineffective assistance of counsel argument to be made. It is or is not? That there is one to be made. That's right. What is the sort of the, again, just to follow up and to be clear on my own mind, what revenue are you seeking? Should there be, in other words, should there be an evidentiary hearing on ineffective assistance of counsel? Should your client specifically raise an ineffective assistance of counsel argument? No, we would argue that the record is sufficient to show the path taken and not taken and that that demonstrates the conflict and that that's enough to warrant reversal because the client did not receive undivided loyalty of counsel under the Sixth Amendment. Thank you, counsel. Thank you. You can plan on two minutes for when you come back. May it please the Court, Virginia Vandertag for the United States. We're going to have a hard time hearing you. Can you try to keep your voice up, please? Yes. Mr. Zuberi pleaded guilty in two plea agreements and waived his right to appeal. Now he argues that one of his counsel had a conflict that rendered one of his pleas invalid. There was no conflict. A defendant who pleaded guilty and then alleges that he had a conflict must demonstrate, first, that there was a conflict, second, that it adversely affected his counsel's performance, and third, that but for the alleged conflict, he would not have pleaded guilty. Mr. Zuberi does not establish these elements. First, he points to the fact that one of his counsel represented another defendant in an unrelated case who reached a deferred prosecution agreement with the government. We understood him to be arguing that his duty had been to tell Mr. Zuberi about those negotiations. I think I'm hearing now that the duty would have been to make those arguments to the government. I did, too, and I'm not sure what happened. So sometimes judges ask where there's a concern about sentencing disparity. In this case, was there any chart prepared, I mean, a representation made that Mr. isn't Zuberi? I want to make sure I'm pronouncing that name correctly. Deferred defense counsel to Mr. Zuberi. That he has access to. Yes, the defense counsel did prepare a chart of sentencing disparities. It did not include these Mr. Arsan in it, but it included many other defendants who either received no sentences, low sentences, or probation. I'm aware of that. I'm asking whether the government made any representation. I beg your pardon? Well, I wasn't clear. I'm sorry. But that's what I meant. Did the court inquire of the government? Was there any representation made by the government? Not to my recollection, Your Honor. I didn't see it in the record, either. It's not a trick question. I'm trying to follow up on opposing counsel's statements, and he'll have an opportunity to do that when he comes back. Certainly. But this, as Your Honor has pointed out, there was before the court ample evidence of other sentences that the court could use to determine whether or not there was a disparity. One he seems to be arguing now is Mr. Arsan. And so what's the government's position about whether Mr. Arsan was similarly situated? Mr. Arsan was not similarly situated, Your Honor. Mr. Arsan was a foreign resident, and his deferred prosecution agreement reflected that he admitted responsibility for aiding and abetting in two violations of the Federal Election Campaign Act. He did not have a FARA charge. He did not have an obstruction charge. And the information filed with the deferred prosecution agreement did not include a tax charge, but the text of the agreement reflected that Mr. Arsan agreed to settle outstanding tax obligations. The cases were not comparable, first, because of the different charges. Mr. Zuberi was charged with additional offenses, FARA, obstruction, tax charges. Second, the magnitude of the offenses. The deferred prosecution agreement reflected that Mr. Arsan admitted to approximately $290,000 worth of FECA violations. Mr. Zuberi's PSR reflected about $774,000 of FECA violations. In addition, he had a restitution amount of $15.7 million. In addition, the deferred prosecution agreement noted another key fact distinguishing these arrangements was that Mr. Arsan was a foreign resident and Mr. Zuberi was not. So the cases were not alike in the charges and the magnitude of the offense or in the situation of the defendants. The Arsan DPA was irrelevant. The defense counsel did, after sentencing, present the argument about deferred prosecution agreements to the court in a bail motion, and the court determined at that later point that the DPAs would make no difference to its analysis. This document is in the Court of Appeals Record at Docket 18, pages 42 and 45, and does not reflect the district court's determination that the DPAs would not make a difference to its analysis. So the government doesn't believe that representing another defendant charged with the same offense does not establish a conflict of interest. You mean its analysis as to what sentence was appropriate? That's correct, Your Honor. Representing another defendant charged with the same offense does not establish a conflict of interest. The defense counsel's obligation is to seek the best possible outcome he can for his client, and Mr. Davis did that for Mr. Zuberi. He sought a deferred prosecution agreement from the government. He sought it more than once. The government put in a supplemental excerpt of record at 4 that said, counsel is still seeking a deferred prosecution agreement from Mr. Zuberi. And that fact establishes that there is no adverse effect on counsel's performance. Counsel sought the best arrangement he could for his client and did not receive it. Defense counsel also suggests in a reply brief that his counsel should have responded to the government's argument about using the sentence to send a message. Defense counsel did respond to this argument by turning it on its head in favor of Mr. Zuberi and asked the court to use the sentence to send a message to others who would plead guilty and, therefore, to give a lower sentence. And this was defense counsel O'Brien rather than defense counsel Davis who made the argument. Any questions? Yes. So in your red brief, the Zuberi's claim also fails because he cannot establish that Davis' representation of Arsane adversely affected his Davis' performance. So my question is this. Putting yourself in the shoes of the defendant, doesn't that set an impossible standard for a defendant whose conflict claim rests on an allegation that his attorney did not inform him of this secret? This is a characterization. I say I agree with it. A punch pulling that allegedly compromised the representation. I don't think so. In other words, how can he establish that his attorney's representation adversely affected his performance in his own case? Well, given that his attorney did seek the best possible outcome he could for Mr. Zuberi and the government declined to give it, we don't see how he could establish under these circumstances an adverse effect on his counsel's performance. So the key thing for you is that there was a deferred prosecution agreement that was sought. This does indicate that his counsel sought the best possible arrangement he could for Mr. Zuberi. That's not to say in another hypothetical case where one wasn't sought that that would be prejudicial. But this does establish that his counsel pursued exactly what he says is at the heart of his conflict of interest claim, this better disposition for someone else. But your argument also, which I think you just made, is that on the record before us, even if we put that aside, this is not apples and apples. Correct. It's our position that Mr. Arson's CPA is irrelevant to this case because it's not a comparable case. So that there was no conflict, his attorney did the best he could for his client. And in addition, this court's case has established that in the case of a guilty plea, a defendant should also establish that but for the alleged conflict, his client would not have pleaded guilty. That's not established here. The Supreme Court cases Hill v. Lockhart and Lee v. United States indicate that there needs to be contemporaneous evidence in the record to substantiate such a claim. And there's no indication that Mr. Zuberi was interested in going to trial. This court in Washington v. Lampert addressed a conflict of interest case and required this showing that but for the alleged conflict, the defendant would not have gone to trial. Has Lee been extended to the conflict of interest context? Not in the Supreme Court, Your Honor, but in this court's jurisprudence in Washington v. Lampert. Separately in U.S. v. Alterese, which was not a guilty plea case, this court rejected the idea of assuming prejudice outside of the context of a defense counsel who represents multiple defendants at the same trial. The court explained that this presumption of prejudice is useful when the entire trial is tainted by a conflict of interest, but where there is a single instance alleged of conflict, it wasn't necessary to presume prejudice. In that case, the defense counsel had been presented with the choice of if he sought a continuance to prepare for trial, he'd have to pay the costs associated with that. And the court said that is an identifiable instance of alleged conflict, notwithstanding the fact that the counsel alleged a number of errors that flowed from that decision not to seek a continuance. The court said prejudice need not be presumed. In this case where the alleged conflict was not using one other client for a prosecution agreement, we think the court can assess the effect of this without a presumption of prejudice, and that the Strickland standards apply, and that he must show that but for his alleged conflict he would not have pleaded guilty. If this court has no further questions. I don't think we do. Thank you. Thank you. We have no closing comments. I'd like to please put two minutes on the clock. Thank you, Your Honors. I don't have a great deal to add other than just to say that I don't believe that the government did share with the court, either in a charter or otherwise, that there were these different prosecution agreements. That was only revealed in a press release after Mr. Zuberi was actually sentenced. All right. I think I misunderstood something that you said earlier to suggest that the government had made that representation as opposed to the defense counsel making the representation about how this would line up with others. So thank you for that clarification. And I think that's all I have to add. All right. In that case, thank you both for your arguments. We'll take this under advisement and make a lot of record. Thank you.
judges: CHRISTEN, BENNETT, Katzmann